UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BENJAMIN MCCULLER, ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 05-1195** |
| **NAUTICAL VENTURES, LLC, ET AL.** | * | **SECTION "L"(4)** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### PROCEDURAL HISTORY

Plaintiff, Benjamin McCuller, was employed by Halliburton Energy Services at a marine terminal in Fourchon, Louisiana. Defendant, Nautical Ventures owns and operates the M/V C- Legend (hereinafter C-Legend), a 280' offshore supply vessel. On April 2, 2004 the C-Legend came to the Haliburton dock to take on dry bulk cement into the vessel's cargo tanks. McCuller's job required him to board the C-Legend to attach hoses to the vessel's manifold to accomplish the cement loading. Vessel access was accomplished by means of the vessel's Jacob's ladder which was secured and put in place by the vessel's crew. McCuller used the Jacob's ladder several times without incident but on his last descent, while he was carrying a clipboard in one of his hands, one of the rungs broke and he fell some five feet to the dock and sustained injury. McCuller filed suit against the vessel owner under the General Maritime Law claiming negligence in improper mooring, failing to give safe ingress, and vessel negligence under 33 U.S.C. §905(b). Miranda McCuller, Benjamin McCuller's wife, seeks damages under the General Maritime Law for loss of consortium.

The Defendant denies liability and claims that the ladder was not damaged prior to

1

deployment. Alternatively, Defendant claims that if the ladder was damaged at the time of deployment, the damage was open and obvious to anyone who used the ladder including the Plaintiff. Further, Defendant claims Plaintiff is capable, at a minimum, of returning to full time sedentary work. Intervenor, Ace American, the worker's compensation insurer for Plaintiff's employer, has paid $160,292.40 in compensation and $203,366.53 in medical bills to, or on behalf of, Plaintiff Benjamin McCuller. Ace seeks to recover from any judgment rendered in this case.

This matter came on for trial without a jury on September 14, 2009. Trial culminated on September 15, 2009. The Court has carefully considered the testimony of all of the witnesses and the exhibits entered into evidence during the trial, as well as the record. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court issues the following Findings of Fact and Conclusions of Law. To the extent that any finding of fact may be construed as a conclusion of law, the Court hereby adopts it as such and to the extent that any conclusion of law constitutes a finding of fact, the Court adopts it as such.

**FINDINGS OF FACT**

(1)

Nautical Ventures, LLC owned and operated the C-Legend at all times relevant to this suit.

(2)

The C-Legend is a vessel 280' in length.

(3)

The C-Legend is equipped with two gangways to provide access to the vessel - one large,

heavier gangway which can only be deployed on the port side of the vessel using the vessel's crane; and a second, lighter gangway, 20' in length, which can be deployed manually by using two (2) or three (3) members of the ship's crew.

(4)

The C-Legend is also equipped with two (2) U.S. Coast Guard approved embarkation ladders, known as Jacob's ladders. Each ladder is 20' in length. The C-Legend's Jacob's ladders are stored in a dedicated metal locker when not in use, located on the vessel's forward cargo deck, starboard side.

(5)

Jacob's ladders are designed to provide access to and from vessels and shoreside facilities. They are acceptable methods of gaining access to and from a vessel but are usually used only when gangways are not in place.

(6)

There exist four (4) embarkation stations on the C-Legend, two (2) on the starboard side and two (2) on the port side.

(7)

On April 2, 2004, the C-Legend sailed up the channel, north, toward Port Fourchon, Louisiana, from the Gulf of Mexico, and docked at the Halliburton dock in Port Fourchon, in order to load dry bulk cement for offshore drilling operations.

(8)

The C-Legend docked starboard side to the Halliburton dock.

(9)

The tanks into which the cement was pumped on April 2, 2004, were on the ship's port side, requiring use of the forward, port side manifold pumping stations.

(10)

Accomplishing the cement pumping operation required a Halliburton employee to board the vessel and connect the hoses to the vessel manifold in order to transport the dry cement to the vessel's tanks. When the loading was completed, the Halliburton employee, in this case McCuller, climbed aboard again and disconnected the hoses from the ship's manifold and lowered them to the dock.

(11)

The vessel's heavy gangway could not be used because the vessel was positioned starboard side to the dock and its lighter gangway could not be deployed because of deck cargo and because access to the dock was blocked. The C-Legend instead deployed a Jacob's ladder to provide vessel access. The evidence does not support Plaintiff's argument that Defendant's breached a duty of care by deploying a Jacob's ladder under these circumstances.

(12)

McCuller used the Jacob's ladder five times during the course of the loading operation. He climbed up the ladder at least three times and disembarked from the vessel on the ladder at least two times without incident. On McCuller's last trip down the Jacob's ladder the ladder's third rung from the bottom gave way. His feet dangled loose and he could not hold on to the ladder and fell to the dock some five feet below. Notably, on this last trip down the ladder, McCuller had a clipboard in his hand.

(13)

The involved ladder was removed from service by the crew of the C- Legend. On April 4, 2009, the ladder was photographed by Halliburton's safety officer, James Wright. The ladder was discarded thereafter.

(14)

The Jacob's ladder used by McCuller was manufactured by Apollo Marine Specialties. The ladder was designed and tested to support 2000 lbs without deflection.

(15)

Dr. George Kyanka, a professor of wood sciences at the Southern University of New York, was accepted as a forensic wood failure expert by the Court. Based upon his knowledge, training, and experience, his familiarity with structural wood failure characteristics, the materials from which the Jacob's ladder step was constructed, and the photographs taken of the ladder damage, Dr. Kyanka concluded that the damage to the Jacob's ladder was caused by a horizontal, compressive force applied across the step's long edge. This type of force and structural failure is consistent with the Jacob's ladder having been crushed between the ship and another object.

(16)

Further, according to Dr. Kyanka, the coloring of the wood indicates that crushing occurred at least two weeks prior to the pictures taken. The pictures were taken two days after McCuller's fall.

(17)

It is more likely than not that this ladder was crushed in a previous deployment.

(18)

Nautical Ventures had a duty to inspect the Jacob's ladder prior to its deployment on April 2, 2009. It was their ladder and they decided to use it. Damage to the ladder should have been apparent to a crewman during a reasonable inspection of the ladder prior to its deployment.

(19)

Benjamin McCuller is not required to assume that the ladder is defective or damaged and conduct a thorough inspection of it before using the ladder. However, McCuller is responsible for avoiding open and obvious dangerous conditions, if any existed.

(20)

The Court does not find it more likely than not that the damaged condition of the ladder would have been open and obvious to McCuller, who was climbing the ladder. It was not his employer's ladder. McCuller had no involvement in deploying the ladder. He had no prior experience with this type of ladder. In fact he had never climbed a Jacob's ladder to gain access to a vessel before and had never seen one being used at this dock. In the past he and his fellow employees had always used gangways. He had no duty to conduct a detailed inspection of the ladder and would not have known what to look for if he had inspected it. A small crack, which would have been noticed upon inspection, would not necessarily have been seen by McCuller, whose focus was on the upward climb and who was concentrating on grabbing the ropes of the ladder as opposed to looking down at where his feet were placed on the step. He was relying on the Defendant employees to check it for damage prior to deploying it.

(21)

McCuller was holding a clipboard at the time he was climbing down the Jacob's ladder

when he fell. The clipboard had a cutout through which McCuller could place his hand, allowing him to hold the clipboard and the rope of the ladder at the same time.

(22)

McCuller violated Halliburton safety procedure and defied common sense by climbing the Jacob's ladder with a clipboard in his hand. The presence of the clipboard contributed to McCuller's injuries as he would have been able to hang onto the ropes of the Jacob's ladder more firmly and either avoid his fall or lessen its impact when the step failed.

(23)

As a result of the accident that occurred on April 2, 2004, Benjamin McCuller sustained injuries to his back and legs. He has been diagnosed as having herniated discs in his lumbar, thoracic, and cervical spine, and a hernia, all of which was caused by his fall. He has occipital neuralgia (headaches at the back of his head) and chronic back pain. He has undergone at least eight surgical procedures to date including an anterior lumbar interbody fusion with cage and screws at L5-S1, a second fusion with a bilateral decompression and an implantation of a bilateral stage l spinal cord stimulator as well as numerous invasive tests, injections and inpatient and outpatient care.

(24)

Benjamin McCuller has no history of back injuries, leg injuries, or occipital neuralgia (headaches at the back of the head) as a result of muscle tension, prior to April 2, 2004.

(25)

McCuller has not worked since the date of the accident. He remains in pain which is made somewhat tolerable with medication and his temporary stimulator. He will never be able

to return to his prior job or any job that requires lifting heavy weights or which requires stooping or bending.  McCuller, nevertheless, wants to return to some form of gainful activity.  His treating physician has opined that he may someday return to sedentary work.  The Court finds that McCuller will sometime in the near future, with some training at a work hardening program, be physically capable of full time sedentary work.

(26)

Benjamin McCuller was born on November 7, 1976.  At the date of his accident on April 2, 2004 he was 28 years old.  His work life expectancy at that time was 37 years.  His average earnings for the four years prior to his injury was approximately $36,000.00 per year.  He has a highschool education, a good work ethic, and is motivated to try to get back into some form of gainful activity to help support himself and his family.   The evidence supports the conclusion that McCuller will not be able to return to his former job because of his physical restrictions, but in about two years should be able to return to some form of gainful activity earning minimum wage.  Minimum wage is used because his continuing pain and physical restrictions will not realistically allow him to compete in the job market for better paying jobs  notwithstanding his highschool education and good motivation.   Based on the forgoing, the credible evidence supports the conclusion that McCuller's past wage loss is $180,000 and his future wage loss is $450,000.

(27)

The undisputed evidence indicates that Benjamin McCuller sustained considerable pain and suffering in the past and is likely to have continuous pain in some form in the future.  In addition he has incurred medical expenses and is likely to incur medical expenses in the future.

8

It is always difficult for any fact finder be it jury or judge to translate pain and suffering into dollars but based on the testimony and a review of the record as well as a preview of applicable jurisprudence this Court finds that a reasonable amount for the past pain and suffering is $550,000 and for future pain and suffering is $250,000. McCuller's past medical expenses total $243,464.98 and his future medical expenses, according to the credible evidence, will be $100,000.

(28)

As to Miranda McCuller, her consortium loss is significant and she is awarded $30,000 for past loss of consortium and $50,000 for future loss of consortium.[1]

(29)

Intervenor ACE American, pursuant to the Longshore & Harbor Worker's Compensation Act, has paid $160,866.88 in compensation and $202,801.85 in medical bills to, or on behalf of, Benjamin McCuller.

## CONCLUSIONS OF LAW

(1)

The Court has jurisdiction over this matter pursuant to 33 U.S.C. § 905(b). This Court has federal question jurisdiction as provided by 28 U.S.C. §1331(1).

(2)

§ 905(b) provides for third-party liability of a vessel owner to a longshoreman working aboard a vessel where 1) the vessel owner fails to turn over a reasonably safe ship or fails to

---

[1] Benjamin and Miranda McCuller seek additional future damages for *in vitro* fertilization. The Court has considered the credible evidence and finds these damages to be highly speculative.

9

warn on turning over the ship of hidden defects of which it knew or should have known (the turnover duty); 2) the vessel owner fails to remedy hazards under the active control of the vessel; 3) the vessel owner fails to intervene in the longshoreman's operations when it has actual knowledge both of the hazard and the longshoreman, in the exercise of obviously improvident judgment, means to work on in the face of it and therefore cannot be relied on to remedy it. *Scindia Steam Navigation Co. V. De Los Santos*, 451 U.S. 156, 167-178 (1981). The Court finds the above noted "turnover duty" applicable to the instant case.

(3)

Defendant Nautical Ventures, as the vessel owner, had a duty to insure that the Jacob's ladder provided to McCuller was not damaged prior to deployment. Had Nautical Ventures completed a proper inspection, they would have discovered defects in the ladder. However, this is not a case where it is "contradictory to suggest that a careful shipowner should discover an apparent defect but that a careful stevedor may miss it with impunity." *Morris v. Compagnie Maritime Des Chargeurs Reunis, S.A.*, 832 F.2d 67, 69-70 (5th Cir. 1987). Benjamin McCuller did not have the same access to or view of the defective ladder nor did he have any experience or training to alert him as to what to look for. Nautical Ventures had a duty to inspect the ladder prior to deployment. This inspection included rolling out the ladder on flat ground, looking individually at the top, bottom, and sides of each step and checking for markings, fractures, or other signs of prior crushing damage. Benjamin McCuller saw the ladder only as it was deployed off of the side of the C/V Legend. He could not see all sides of each step, and further, while climbing, it was not his job to look at each step. McCuller was looking upwards and balancing on a relatively unstable ladder hanging from a docked ship. What may be open and

obvious from one angle or view is not necessarily so from another. Any damage the ladder sustained prior to deployment was not open and obvious to McCuller.

(4)

In a suit against the negligent shipowner, a longshoreman or harbor worker's award will be reduced by the portion of damages assignable to the longshoreman's negligence. *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 259-260 (1979). Benjamin McCuller's possession of a clipboard in his hand while climbing the Jacob's ladder was negligent and contributed to his fall and subsequent injuries.

(5)

Accordingly, the Court finds that the following apportionment of fault is appropriate: (1) Nautical Ventures is 70% at fault for the ladder's failure and McCuller's subsequent injuries; and (2) McCuller is 30% at fault.

(6)

Miranda McCuller's damages for loss of consortium will likewise be reduced by the percentage of Benjamin McCuller's contributory negligence. *See Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1434 n.14 (5th Cir. 1988).

(7)

Intervenor ACE American is entitled to recoup its compensation and medical payments, totaling $363,668.73 from McCuller's net recovery after a calculation of McCuller's comparative fault. *See Masinter v. Tenneco Oil Co.*, 867 F.2d 892 (5th Cir. 1989) (holding a worker's compensation carrier was entitled to recoup compensation payments to a worker from the worker's net recovery of benefits under the LHWCA).

**PRE-JUDGMENT INTEREST**

In admiralty cases, although an award of prejudgment interest is discretionary with the court, such interest is normally awarded unless specific circumstances are present that would make the award inequitable. *See Probo II London v. Isla Santay M/V*, 92 F.3d 361, 363-64 (5th Cir. 1996). The rate of prejudgment interest, as well as the date from which it accrues, is also discretionary with the court. *See* SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5-21 (4th ed.). "The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss.... [P]rejudgment interest is not awarded as a penalty; it is merely an element of just compensation." *City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 195-97 (1995). Prejudgment interest is appropriate in cases of mutual fault, and "denying prejudgment interest on the basis of mutual fault would seem to penalize a party twice for the same mistake. Such a double penalty is commended neither by logic nor by fairness...." *Id.* at 199 (citing *Alkmeon Naviera, S.A. v. M/V Marina L*, 633 F.2d 789 (9th Cir. 1980)). Given the facts of the instant case, the Court finds that an award of prejudgment interest on all past damages at the rate of 5.5% per annum from the date of judicial demand is appropriate.

SUMMARY

Based on the foregoing Findings of Fact and Conclusions of Law, the Court finds the Plaintiff, Benjamin McCuller is entitled to judgment against the defendant in the following amounts:

| | | |
|---|---|---|
| Past loss wages: $180,00.00 | reduced by 30% | **$126,000.00** |
| Future loss wages: $450,000.00 | reduced by 30% | **$315,000.00** |
| Past pain and suffering: $550,000.00 | reduced by 30% | **$385,000.00** |

| | | | |
|---|---|---|---|
| Future pain and suffering: $250,000.00 | reduced by 30% | **$175,000.00** |
| Past medical expense: $243,464.98 | reduced by 30% | **$170,425.49** |
| Future medical expense: $100,000.00 | reduced by 30% | **$70,000.00** |

Intervenor, Ace American Insurance Co. is entitled to be reimbursed from the above recovery of Benjamin McCuller for the following amounts it has paid to or on behalf of the Plaintiff Benjamin McCuller for compensation and medical benefits:

Past workmen's compensation benefits: **$160,866.88**

Past medical expenses: **$202,801.85**

Plaintiff, Miranda McCuller is entitled to judgment against the defendant in the following amounts:

| | | | |
|---|---|---|---|
| Past loss of consortium: $30,000.00 | reduced by 30% | **$21,000.00** |
| Future loss of consortium: $50,000.00 | reduced by 30% | **$35,000.00** |

All of the above sums include pre judgment interest from judicial demand at the rate of 5.5% on all past losses and judicial interest on all sums from date of judgment until paid.

IT IS SO ORDERED.

New Orleans, Louisiana this 5th day of October, 2009.

*(signature: Eldon E. Fallon)*

UNITED STATES DISTRICT JUDGE