UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MIRANDA MCCULLER, WIFE OF/ | * | |
| AND BENJAMIN MCCULLER | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 05-1195 |
| | * | |
| NAUTICAL VENTURES, LLC, ET AL. | * | SECTION "L"(4) |

**FINDINGS OF FACT & CONCLUSIONS OF LAW**

**I. BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of an accident that occurred on April 2, 2004, while Plaintiff Benjamin McCuller was working for Halliburton at a dock in Fourchon, Louisiana. Mr. McCuller alleges his job required him to gain access to vessels as they were serviced and supplied at the dock. On April 2, 2004, Mr. McCuller boarded the M/V C-LEGEND, owned by Defendant Nautical Ventures, using a safety rope ladder. Mr. McCuller alleges that he was required to use this ladder at the request of the captain of the C-LEGEND, although the gangway was the traditional and almost exclusive method of boarding vessels at the dock. Mr. McCuller alleges that, when he used the rope ladder, one of the rungs collapsed, causing him to fall to the dock. Mr. McCuller alleges that he sustained injuries to his back and knees as a result of the fall. He alleges jurisdiction of this Court under the Jones Act and General Maritime Law for negligence, and has made demand for compensatory damages in the amount of $2 million and punitive damages in the amount of $4 million. Additionally, Plaintiff Miranda McCuller, Mr. McCuller's wife, has made demand for loss of consortium in the amount of $250,000.

The Court conducted a two-day bench trial beginning on September 14, 2009 and ending

1

on September 15, 2009.  Exercising jurisdiction pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 905(b), the Court found that Nautical Ventures was 70% at fault for the accident and Mr. McCuller's subsequent injuries, and that Mr. McCuller was 30% at fault.  The Court entered judgment in favor of Benjamin McCuller against Nautical Ventures for $1.24 million, and in favor of Miranda McCuller and against Nautical Ventures for $56,000.  The Plaintiffs appealed the Court's findings of comparative fault and its damages award, and Defendant appealed the Court's finding of liability.  The United States Court of Appeals for the Fifth Circuit issued its judgment on July 28, 2011, affirming this Court's findings of liability, comparative fault, and present and past damages, but vacating and remanding this Court's damages award with respect to expenses for the Plaintiffs' future medical needs.  The opinion explained that it found the award of $100,000 for future medical expenses "insufficiently particular" and remanded the case for further findings on the issue.  The Court of Appeal directed that "[t]he district court may, of course, make such further findings and conclusions as it may see fit, and may, in its discretion, take further evidence as to damages, or base its findings and conclusions upon the record already made."  *McCuller v. Nautical Ventures, L.L.C.*, 434 F. App'x 408, 418 (5th Cir. 2011) (quoting *Neill v. Diamond M. Drilling Co.*, 426 F.2d 487, 492 (5th Cir.1970)) (internal quotation marks omitted).  On November 23, 2011, the Court granted the Plaintiffs' Motion for New Trial on the issue of future medical expenses.

     This claim came on for trial before the Court without a jury on June 25, 2012.  Trial culminated on June 26, 2012.  The parties requested and the Court granted additional time to file supplemental briefs.  The Court has carefully considered the testimony of all of the witnesses, the exhibits entered into evidence during the trial, and the record.  Pursuant to Rule 52(a) of the

Federal Rules of Civil Procedure, the Court hereby enters the following findings of fact and conclusions of law. To the extent that any findings of fact may be construed as conclusions of law, the Court hereby adopts them as such. To the extent that any conclusions of law constitute findings of fact, the Court adopts them as such.

## II. FINDINGS OF FACT

Future medical expenses in this matter consist of expenses incurred since the September 14, 2009 trial. The Court's findings will be divided into two categories: medical expenses incurred since the 2009 trial and projected future expenses.

**A. Medical Expenses Incurred Between the September 14, 2009 Trial and June 26, 2012**

Mr. McCuller has undergone four surgical procedures since the last trial date. First, on November 6, 2009, Mr. McCuller underwent the implantation of a stage II or "permanent" dorsal column stimulator ("DCS") by Dr. Erich Wolf, a neurosurgeon, at St. Patrick Hospital. Second, on June 25, 2010, Dr. Wolf removed the first and implanted a second "permanent" DCS generator.

Third, on September 29, 2011, Dr. Gregory Rubino performed lumbar surgery on Mr. McCuller to remove some of his implanted hardware, which included the removal of the left L4-5 and L5-S1 pedicle screws with a facetectomy at L4-5 on the left. Dr. Rubino also completely unroofed the L4 nerve root from its axilla to its egress into the soft tissue. However, during this procedure, the dura was torn, and Mr. McCuller suffered a spinal cord fluid leak.

Finally, on October 25, 2011, Mr. McCuller underwent a fourth surgery that consisted of placing a lumbar external drain with re-exploration of L4-5 for facetectomy, removal of

additional bone overlying the L4 nerve root, exposure of the thecal sac edges, duraplasty with DuraGen sponge, autologously harvested muscle and autologously harvested fat and fibrin glue. After surgery, Mr. McCuller's left-side symptoms improved; however, he began experiencing right-side symptoms. In February 2012, Dr. Rubino ordered a repeat lumbar CT scan, in addition to an EMG and NCS. The EMG and NCS showed a right L4 radiculopathy, and Dr. Rubino noted that the CT scan showed Mr. McCuller's L4 nerve root possibly crossed at L3-4.

In addition to his surgical procedures, Mr. McCuller underwent two nerve blocks by Dr. James Eddy in late 2010 and early 2011, but did not receive substantial relief from his low back pain. Mr. McCuller underwent two additional S1 nerve blocks after his fourth surgery to help relieve the right-sided radicular symptoms.

Mr. McCuller's medical care causally related to his injuries, incurred from the September 14, 2009, trial through February 29, 2012, totals $401,537.81. The Court finds that this amount is reasonable, and the treatment was made necessary by Mr. McCuller's injuries.

**B. Future Medical Expenses**

All medical witnesses, whether called by Plaintiffs or Defendant, agree that the Plaintiff will need some sort of medical care for the remainder of his life.

Although Mr. McCuller states that his back pain has improved somewhat since the first trial, the credible evidence supports the finding that his back pain is constant and, at times, significant. Mr. McCuller experiences a reduction in his leg and back pain from his use of the DCS, and, as a result, he is able to take less pain medication than he would otherwise. As a result, the Court finds that the use of the DCS for Mr. McCuller's pain control is reasonable and necessary treatment, and the costs of the treatment and the periodic replacement of DCS

components should be included in his future medical compensation.  In addition, Mr. McCuller's DCS system will require a performance evaluation two times per year, a cost that should be included in his future medical compensation.

The credible evidence supports the finding that, more likely than not, Mr. McCuller's future medical routine will include the following: a CT scan of the lumbar spine every other year; treatment with a family medicine physician once every three months, with two emergent visits annually; laboratory testing three times a year; treatment with a neurologist twice a year; nine appointments per year with a neurosurgeon; an appointment with a urologist every three months; an appointment with a neurologist once a year; urodynamics studies done once a year; cystoscopy performed once per year; a bladder scan four times per year; urinalysis performed four times per year; an EMG study once every three years; appointments with a pain medication physician four times per year for the first two years and twice a year every year thereafter; one inter-provider consultation annually between the neurosurgeon and pain medication physician; and one series of twelve Urgent PC treatments.

Mr. McCuller's physicians have observed that, over time, Mr. McCuller has put on weight due to his chronic pain and inability to exercise effectively.  Weight gain puts more stress on Mr. McCuller's spine and exacerbates Mr. McCuller's pain issues.  Mr. McCuller's treating physicians have recommended a year-round membership to a gym that offers aquatic therapy and swimming.  The credible evidence supports the finding that the need for a gym membership is causally related to Mr. McCuller's injury.  Accordingly, the Court finds that Mr. McCuller's future medical costs include a one-time gym membership initial fee and a monthly fee thereafter, for life.

Mr. McCuller takes numerous prescription medications for his accident-related injuries. The evidence supports the conclusion that Mr. McCuller will be weaned from his current Dilaudid prescription, and therefore the cost for that medication is not included in the future medical care costs.  These medications will include, going forward: Promethazine 25 mg pm, Tizanidine 4 mg tid, Lexapro 30 mg daily, Lyrica 200 mg bid, Topamax 100 mg pm, Bystolic 2.5 mg, Keppra 500 mg qid, Topiramate 50 mg bid, Triplix 135 mg daily, Omega 3 daily, Amitiza 24 mg daily, Rapaflo 8 mg daily, Avodart daily, Buprenorphines 2 mg prn, and Imitrex 6 mg tablets and injections prn.  Mr. McCuller will need these medications for life.  Furthermore, the Court finds that Mr. McCuller's current medication pricing accurately reflects his expected medication costs into the future.

Mr. McCuller will require physical therapy in order to recover from or deal with his injuries.  The evidence shows, however, that Mr. McCuller will not be able to begin physical therapy immediately, because he has not yet reached the "chronic" stage of his injuries so as to receive the required clearance from his physicians.  Therefore, the Court finds that although Mr. McCuller will require physical therapy for life, he will not incur this cost immediately. Accordingly, the Court finds that Mr. McCuller's future medical costs should include an annual evaluation and eighteen therapy sessions per year, beginning in 2014.

The evidence supports the finding that Mr. McCuller will require epidural steroid injections (ESIs) twice per year.  Accordingly, the Court finds that this cost should be included in Mr. McCuller's future medical compensation.

The evidence shows that due to Mr. McCuller's sympathetic nerve injury sustained during his first lumbar fusion operation, he has recently developed a problem with urine

retention.  Mr. McCuller has developed a neurogenic bladder and cannot void without assistance, which includes self-catheterization.  Mr. McCuller will require self-catheterization supplies for life, consisting of five urinary catheters per day, vinyl gloves for handling catheterization equipment, and catheter lubricant. The Court finds that Mr. McCuller's neurogenic bladder is casually related to his originally injury, and therefore the self-catheterization supplies should be included in his future medical costs.

Mr. McCuller's treating neurosurgeon has identified additional pathology in Mr. McCuller's lumbar spine that, more likely than not, will need to be surgically addressed in the future.  The Court finds that, more likely than not, Mr. McCuller will undergo at least three additional lumbar surgeries over his lifetime.  The Court finds that the cost of each surgery, including pre-operation testing, the surgical fee, hospital charges, and anesthesia, should be included in Mr. McCuller's future medical costs.

In order to get to and from Mr. McCuller's care providers, Mr. McCuller is entitled to recover costs for mileage incurred.  The Court finds that the total annual mileage required by Mr. McCuller's causally related medical care is 1,120 miles.

The Court concludes that the evidence establishes that Mr. McCuller will require the following future medical care at the following projected costs:[1]

---

[1]Unless otherwise stated, all projected costs continue for 43 years, based on Mr. McCuller's projected life expectancy of 78.

| Category | Item/Service | Frequency | Cost per unit | Subtotal |
|---|---|---|---|---|
| Durable Medical Items | DCS charging system replacement | 1 time every 4 years, beginning 2015 | $3,300.00 | $33,000.00 |
|  | DCS remote control replacement | 1 time every 2 years, beginning 2013 | $1,300.00 | $27,300.00 |
| Future Medical Care Routine | Diagnostic imaging | 1 time every 2 years | $2,682.50 | $59,015.00 |
|  | Family Medicine Physician visits | 1 time every 3 months | $149.00 | $25,479.00 |
|  | Laboratory Testing | 3 times per year | $620.25 | $80,012.25 |
|  | Neurologist visits | 2 times per year | $131.00 | $11,266.00 |
|  | Neurosurgeon visits | 9 times per year | $125.00 | $48,375.00 |
|  | Urologist visits | 4 times per year | $136.50 | $23,341.50 |
|  | Neuro-urologist visits | 1 time per year | $175.00 | $7,350.00 |
|  | Urodynamics studies | 1 time per year | $950.00 | $40,850.00 |
|  | Cystocopy | 1 time per year | $1,316.00 | $56,588.00 |
|  | EMG of lower extremities | 1 time every 3 years | $369.00 | $5,535.00 |
|  | Family Medicine emergent/additional visits | 2 times per year | $149.00 | $12,814.00 |
|  | Pain Management Physician visits | 4 times per year for 2 years | $200.00 | $1,600.00 |
|  | Pain Management Physician visits | 2 times per year beginning in 2014 | $200.00 | $16,400.00 |
|  | Pain Management Physician unexpected/emergent visits | 1 time per year | $200.00 | $8,600.00 |

|  |  |  |  |  |
|---|---|---|---|---|
|  | Consultation with Drs. Rubino and Lewis | 1 time per year | $350.00 | $15,050.00 |
|  | Urgent PC treatment | 1 time only | $3,079.50 | $3,079.50 |
|  | Bladder scan | 4 times per year | $86.00 | $14,792.00 |
|  | Urinalysis | 4 times per year | $17.50 | $3,010.00 |
| Health and Strength Maintenance | Gym membership initial fee | 1 time only | $75.00 | $750.00 |
|  | Gym membership monthly fee | 12 times per year | $75.00 | $38,475.00 |
| Medications | Current medication | 12 times per year | $1,250.52 | $652,695.22 |
| Projected Evaluations | Physical therapy evaluation | 1 time per year, beginning 2014. | $210.00 | $8,610.00 |
|  | DCS evaluation | 2 times per year | $125.00 | $10,750.00 |
| Projected Therapeutic Modalities | Physical therapy | 18 times per year, beginning 2014 | $125.30 | $92,471.40 |
|  | ESIs | 2 times per year | $1,200.00 | $103,200.00 |
| Annual Supplies | Catheters, 5 per day each year | 1 time per year | $2,080.50 | $89,461.50 |
|  | Gloves ($3.70 per box of 50) | 1 time per year | $135.00 | $5,805.00 |
|  | Lubricant ($146.00 per year) | 1 time per year | $146.00 | $6,278.00 |
| Surgical Intervention | Lumbar spine surgery | 3 times only | $100,000.00 | $300,000.00 |
|  | DCS replacement surgery | 1 time every 7 years | $148,280.00 | $889,680.00 |
| Transportation | Mileage (1120 miles per year, 55.5 cents per mile) | 1 time per year | $621.60 | $26,728.80 |

At trial, the evidence showed that the present costs of future medical care should be calculated by incorporating both the inflationary tendencies of each item and the discount to the present value equivalent. In some cases, however, the anticipated rising cost of certain items will reduce or entirely "offset" the present value discount. Regarding the items in the "Durable Medical Items," "Health and Strength Maintenance," "Supplies," and "Transportation" categories listed above, the evidence supports the conclusion that the items should be reduced by 1.5%. With respect to the costs for family medical physician visits (regular and emergent), the consultations with Drs. Rubino and Lewis, physical therapy, and physical therapy evaluations, the evidence supports the conclusion that the items should be reduced by 1.0%. Finally, regarding the costs for "Medications," "Surgical Interventions," the DCS evaluations, and the remaining items in the "Future Medical Routine" category, the evidence supports the conclusion that the present value discount is offset by the rising costs.

Therefore, the evidence produced at trial supports the finding that the present value costs for Mr. McCuller's future medical care are as follows:

| Service or Item, Frequence and Duration | Relative Discount/Inflation Assumption | Present value |
|---|---|---|
| Durable Medical Items, one time every 4 years | Net 1.5% discount | $24,494.00 |
| Durable Medical Items, one time every 2 years | Net 1.5% discount | $20,296.00 |
| Future Medical Care Routine, once | N/A | $3,080.00 |
| Future Medical Care Routine, every 2 years for life | Offset | $59,015.00 |
| Future Medical Care Routine, begin 2013 | Offset | $7,350.00 |
| Future Medical Care Routine, begin 2014 | Offset | $16,400.00 |

| | | |
|---|---|---|
| Future Medical Care Routine, yearly for 2 years | Offset | $1,600.00 |
| Future Medical Care Routine, every 3 years | Offset | $5,535.00 |
| Future Medical Care Routine, yearly for life (Family Medicine visits and Consultations with Drs. Rubino and Lewis) | Net 1.0% discount | $43,304.00 |
| Future Medical Care Routine, yearly for life (remaining items) | Offset | $278,371.00 |
| Health and Strength Maintenance, once | N/A | $75.00 |
| Health and Strength Maintenance, yearly | Net 1.5% discount | $28,369.00 |
| Medications | Offset | $645,268.00 |
| Projected Evaluations, yearly beginning 2014 (physical therapy) | Net 1.0% discount | $6,932.00 |
| Projected Evaluations, yearly (DCS evaluation) | Offset | $10,750.00 |
| Projected Therapeutic Modalities, yearly beginning 2014 (physical therapy) | Net 1.0% discount | $75,803.52 |
| Supplies | Net 1.5% discount | $74,437.00 |
| Surgical Intervention, At age 40, every 7 years | Offset | $889,680.00 |
| Surgical Intervention, 3 times over lifetime | Offset | $300,000.00 |
| Transportation, yearly | Net 1.5% discount | $19,594.00 |
| | | |
| | **Total** | $2,510,353.52 |

**C. Summary**

The Court finds that the evidence supports the conclusion that Mr. McCuller's future medical costs total $2,911,891.33. This total represents the sum of the costs accrued between the September 2009 trial and June 2012 trial, totaling $401,537.81, and the projected future medical costs, totaling $2,510,353.52.

11

**III. CONCLUSIONS OF LAW**

Mr. McCuller's fault has been determined to be thirty percent. All damages assessed will be reduced by thirty percent to account of Mr. McCuller's fault. In addition, Nautical Ventures, LLC, is entitled to a credit of $70,000.00 for the payment previously received by Plaintiffs for future medical damages as awarded in the judgment that resulted from the September 2009 trial.

Plaintiffs are entitled to interest for losses incurred after the 2009 trial. That interest will accrue at the judicial rate from the date of this judgment until paid. 28 U.S.C. § 1961; *Chapman & Cole v. Itel Container Intl.*, 865 F.2d 676, 689 (5th Cir.1989).

ACE American Insurance Company is entitled to recover the $24,142.03 that ACE has paid for Mr. McCuller's medical care from the September 14, 2009, trial until this date. However, because this trial was limited to future medical costs and not wage loss or general damages, any indemnity payments made by ACE during this time frame shall not be deducted from Plaintiffs' future medical expenses award, but rather shall serve as a credit that the Plaintiffs must satisfy before ACE's LHWCA obligations resume.

## IV. SUMMARY

Based on the above findings of fact and conclusions of law, the Court finds that Plaintiffs are entitled to recover from Nautical Ventures $401,537.81 for medical expenses since the 2009 trial and $2,510,353.52 in future medical expenses, less 30% for Mr. McCuller's contributory negligence and less $70,000.00 for the Nautical Ventures' credit for previously paid costs, for a net total amount of $1,968,323.93.  In addition, Plaintiff is entitled to interest at the judicial rate for the losses incurred since the 2009 trial from the date of this judgment until paid.  The Court further finds that ACE American Insurance Company is entitled to recover $24,142.03 from Mr. McCuller as reimbursement for its payment for Mr. McCuller's medical care.

**IT IS SO ORDERED.**

New Orleans, Louisiana, this 24th day of September, 2012.

_____
UNITED STATES DISTRICT JUDGE